IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| V. | * | Case No. ELH-19-0483 |
| ELIJAH PARKER | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF DEFENDANT'S MOTION TO SUPPRESS

Now comes the Defendant, Elijah Parker, by his attorney, Law Offices of Gerald C. Ruter, P.C., and supplements his Motion to Suppress, filed on January 30, 2020, at ECF 16.

### Factual Background

Many times when the government and defense disagree on the outcome of an issue before the Court there is not so much a dispute over the facts or the applicable law; rather, the dispute lies in how the facts are applied to the law. This is such a case. Somewhat unique to most cases involving warrantless searches is the fact that in the case now before the Court virtually all the facts necessary for its determination of whether the arrest and search of Mr. Parker passes constitutional muster are contained in a body worn camera and an encounter from start to finish that encompasses but a few minutes in time.

The government, at pages 3 and 4 of its supplemental submission, at ECF 41, set forth its version of the facts of the case that form the basis of the stop and search of Mr. Parker. Although all references made by the government to the motions hearing transcript

1

are correct there are other portions equally important to the issues posed by this case that will be referenced herein.

We learned from the body worn camera (Exhibit 1 at the motions hearing) that after being in the presence of Mr. Parker for approximately 14 seconds it appears that Officer Wharton called for back-up. Off. Wharton confirmed that at Tr. 23:24-25.[1]

From the outset of the contact between Officer Wharton and Mr. Parker we learned from the body worn camera of the officer that Mr. Parker was not free to go after some 30 seconds had elapsed from the time Mr. Parker was first encountered by the officer. We also learned from the body worn camera that the officer claimed simultaneously with advising Parker he was not free to leave that he *smelled marijuana*. He did not say he *smelled burnt marijuana* until he got into the courtroom and testified to it during the motions hearing. Tr. 24:3.

The Court should note that Officer Wharton testified at Tr. 9:14-21 and 28: 22-24 of the motions hearing transcript that the officer had called the owner of the laundromat in the past because when he suspected someone of trespassing he knew that the owner watched from his home the cameras inside the laundromat and would inquire about the persons he found inside the laundromat that he suspected of trespassing and how long they had been inside and whether they had been doing any laundry Tr. 29:2-9. He testified further that sometime the owner would call the police department after seeing people in his

---

[1] It should be noted that at Tr. 23:22-23, government counsel indicates she is stopping the video at "one minute, 19 seconds." The officer first activated his BWC time mechanism when he first encountered Mr. Parker at approximately 33 seconds meaning he was calling for a backup in just over one minute after first speaking with Mr. Parker.

2

laundromat he deemed to be trespassing and would request the police to go cite the trespassers. Tr. 28:11.  None of that occurred in this case.

At Tr. 26:4-8, the officer testified he "was just biding his time" to arrest Mr. Parker until backup arrived.

At Tr. 30:7-16, the officer admitted that he heard Mr. Parker tell him that he had "just" finished drying clothing and that the officer asked him no more questions about laundry.  Tr. 30:17-25.

At Tr. 31:1-25, the officer testified in his past experience with investigating possible trespass at the very same laundromat he inspected washers and dryers to see if any clothes were in them or touched the dryers to see if they were warm to the touch.  More telling, at Tr. 33:125-34:1-25, Officer Wharton was questioned about his own mindset concerning when he thought he had reasonable articulable suspicion or probable cause.  He testified that "half the people that I've locked up for. . .say they just got done doing laundry" Tr. 34:10-13 and when asked at Tr. 34:14-16 "Well, when they say that though, do you check to see if they actually had laundry?" he answered "I do".  Tr. 34:17.

At Tr. 35:9-13, Officer Wharton altered his prior testimony that is also inconsistent with his interaction with Mr. Parker seen on his body worn camera when he testified, "So I didn't feel like I needed to ask consent to search the book bag when I smelled the marijuana *when I entered the facility* and could smell it on him."

3

At Tr. 40 and 41, the officer testified he was going to arrest Mr. Parker then to see if he had clothing in his bookbag to support that arrest. See Tr. 41:11-15.

### Argument

### When did the Fourth Amendment first become implicated?

The Fourth Amendment is implicated when an individual has been seized, meaning the person is no longer "free to leave." Michigan v. Chesternut, 485 U.S. 567, 573 (1988). The test to be employed in making this determination is "when, in view of the totality of the circumstances surrounding the 'stop,' a reasonable person would not feel free to leave or otherwise terminate the encounter." United States v. Weaver, 282 F.3d 302, 309-310 (4th Cir.), cert. denied 537 U.S. 847 (2002).

Based upon the body worn camera and the officer's testimony it is clear Mr. Parker was seized no later than when the officer requests back up on his police radio. After being asked if he was doing laundry and being told he was presently trespassing and the officer requesting police back up - it would to a reasonable person, especially a black person, make that person feel he is not free to leave or otherwise end the encounter.

### At the time Parker was 'seized' did reasonable articulable suspicion exist?

The government advances the argument that the officer had reasonable articulable suspicion to seize Mr. Parker at the time Mr. Parker moved toward the officer presumably to attempt to leave. Two possibilities exist says the government in support of this seizure of

4

Mr. Parker. First, the government argues criminal trespass existed at this time. It existed because:

1) the officer saw no laundry; 2) he heard no noise coming from the machinery at the laundromat; and 3) Mr. Parker was charging his phone. These set of facts do not establish reasonable articulable suspicion. Establishing this legal standard obviously is an intensely factual matter. It must be considered in the context of the crime being investigated. Officer Wharton was not investigating an armed robbery or an unsolved murder. He was investigating a trespass case in a public place where the public is invited seven days per week, twenty-four hours a day. It has vending machines and a TV and outlets for people to charge their phones. In 2018, there were over 400 million cell phones in service in the United States. This is still a country where people are permitted to move about 24 hours a day seven days per week. In the context of the offense being investigated this officer did not have the requisite legal suspicion to seize Mr. Parker. The government cites to cases that stand for the proposition that law enforcement is not required to eliminate alternate possibilities that would turn suspicious behavior into innocuous behavior. Those cases miss the mark. In this case, the officer needed to do more in order to get him beyond a mere hunch. He was required to ask to look in the backpack or touch the dryers next to where Mr. Parker was standing or to do anything that could get him over the legal hurdle he is required to surpass. That is exactly what he had done in other trespass cases he testified about.

### Did Officer Wharton have probable cause to arrest Mr. Parker for criminal trespass?

Officer Wharton never established probable cause to arrest Mr. Parker for trespass. First, it is not apparent from the evidence that the no trespassing sign was conspicuously displayed. Although a photo of the sign was introduced at trial the body worn camera, in counsel's review, does not demonstrate the sign was displayed in such a way that it would be apparent to Mr. Parker. This is so even in light of the officer's testimony.

Since Officer Wharton did not possess reasonable articulable suspicion he by definition could not have possessed probable cause. Moving forward from the time Mr. Parker was seized we inquire of what additional information did the officer gain before he arrested him. He learned that: 1) Mr. Parker had no permanent address; and 2) Mr. Parker gave a name that did not come back as he checked with dispatch. The question then must be asked whether these facts gave the officer the legal justification he needed to arrest Mr. Parker. It does not. These two facts may have provided the officer with enough information to provide reasonable articulable suspicion - that would have given him legal justification to inquire further. If it did provide such, the officer had no right to arrest Mr. Parker, handcuff him and search him. A <u>Terry</u> investigatory stop only gives an officer the right to do an external pat down for officer safety and nothing more. Officer Wharton had no intention of doing a less intrusive pat down. He made that very clear when he told Mr. Parker he was going to handcuff him and search him. Interestingly, he testified he was going to search

6

him for evidence of trespassing. Tr. 41:11-15. Counsel is unsure how the search of Mr. Parker's body could result in discovering evidence of trespass. It is axiomatic that the search of a person is much more intrusive than the search of a place or thing and is accorded "unique, significantly heightened" constitutional protections. Wymoning v. Houghton, 526 U.S. 295, 303 (1999).

Instructive of the issue of establishing probable cause is the case of In Re: Jason Allen D., 127 Md.App 456 (1999).[2] Although the case involved the allegation that Jason had trespassed upon a public housing authority property after having been advised he could not be on the apartment complex property, in violation of Article 27 Section 577, its reasoning is viable for the issues presented herein. Jason was seen (after having received a warning a couple of hours earlier not to enter the property) with other youngsters on the property. The officer who had cited him with a warning earlier in the day approached him a second time and arrested him for criminal trespass on the public housing property. The officer did not inquire whether Jason lived in the complex or whether he was visiting anyone who lived or otherwise had the right to be on the property at that time.

The Jones Court not only examined the sufficiency of the evidence that resulted in Jones' conviction but also whether probable cause to arrest him was present. It concluded the arresting officer did not have probable cause because he did not know whether Jones lived at the complex or whether he was visiting someone who did live at the

---

[2] This 46 page reported opinion was authored by Judge Ellen Lipton Hollander when she was an Associate Judge of the Maryland Court of Special Appeals.

7

complex. Jones was admittedly not committing any other offense at the time he was approached by the arresting officer. The Jones Court cited State v. Blair, 827 P.2d 356 and Jones v. Commonwealth, 443 S.E.2d 189 (Va.Ct.App. 1994). The intermediate court of appeals of Washington noted in Blair that "(h)ad [the officer] taken a moment to ask Blair where he was going and for what purpose, he could have determined whether Blair was in fact visiting a friend or was trespassing." Id. At 359. The Virginia Court of Appeals in Jones noted that the officer's observations "permitted only a bare suspicion" that Jones was not legitimately on public housing property. Judge Hollander wrote that "(A)s in Blair and Jones, Officer Custead ignored the possibility that appellant was at Sagner at the invitation of an authorized resident." Id. at 455.

### Did Officer Wharton have reasonable articulable suspicion to believe that Mr. Parker possessed marijuana?

The Court should reject Officer Wharton's testimony as it relates to the smell of marijuana providing legal justification to support reasonable articulable suspicion.

Officer Wharton first advised Mr. Parker he smelled marijuana when Mr. Parker attempted to leave the laundromat. He told Mr. Parker he smelled marijuana on at least three occasions during their encounter. Marijuana is neither a felony or a misdemeanor if it is not possessed in a minimum quantity or with the intent to distribute it.

Officer Wharton testified he smelled burnt marijuana. The Court

may take judicial notice that burnt marijuana smells differently than raw marijuana. This Court can take judicial notice that it is extremely unlikely that a very small quantity of marijuana contained in one's pants pockets is detectable by the human nose. The Court heard from Officer Wharton that the search of Mr. Parker's body revealed no marijuana. Presumably, someone searched the backpack and no evidence has been introduced that any marijuana was contained in it.

Officer Wharton testified that he smelled marijuana when he "first entered the facility".

The highly contradictory testimony, some contradicted by the body worn camera, should make this Court more than pause in its assessment of the officer's account of events. In such an instance, of course, the Court is at liberty to credit such testimony as it deems appropriate. Counsel vigorously urges the Court to give no weight to the officer's marijuana related testimony.

If the Court finds reasonable articulable suspicion existed at some point during the encounter it would not permit a full search of Mr. Parker's person. Rather, such suspicion would permit the officer to do no more than make further inquiry designed to see if further evidence could be found to produce a probable cause determination.

### Did Officer Wharton have probable cause to believe that Mr. Parker possessed marijuana?

This issue was the subject of discussion and argument at the motions hearing and addressed in the government's supplemental

9

briefing. It is here that cases of Robinson v. State, 451 Md. 94 (2017); Norman v. State, 452 Md. 373, *cert, denied*, 138 S.Ct. 174 (2017); Pacheco v. State, 465 Md. 311 (2019); and Lewis v. State, 233 A.3d 86 (Md. 2020); and Humphries v. United States, 372 F.3d 653 (4th Cir. 2004) converge. The government cites to Lewis and Humphries to support its position that the odor of marijuana, at least on March 20, 2019, standing alone, provided probable cause to arrest and search a person for possession of marijuana. It is significant in Lewis that the Court of Appeals noted that the arresting officer "smelled the odor of marijuana on Petitoner's breath and body. . ." Likewise, in Humphries, the Court noted that the officer smelled the strong odor of marijuana on the person and breath of Humphries from 20 feet away. In addition, Humphries is a Virginia case where possession of any marijuana is still a crime. Many other cases that are pre-Pacheco and Lewis. Pacheco involved police approaching a vehicle in which Pacheco was sitting (as it turns out behind a laundromat) and as the officer approached the vehicle he smelled the strong odor of burnt marijuana.

Since marijuana had been de-criminalized in Maryland and pre-Pacheco, a probable cause determination had to be determined without losing sight of the significance that de-criminalization had in the context of Fourth Amendment jurisprudence. The degree of and the strength of the marijuana being smelled takes on a heightened significance. If it were otherwise, police would literally have been permitted to arrest virtually thousands, perhaps tens of thousands of Marylanders who smell of marijuana but were not engaged in any criminal activity. The Fourth Amendment would have no vitality if the

amorphous odor of marijuana alone was sufficient to arrest a person. The Pacheco decision was an absolute necessity required to reign in the activity of law enforcement from having unfettered power to arrest anyone on a suspicion of marijuana possession. Officer Wharton used this unfettered power on Mr. Parker when he added the smell of marijuana to his arsenal in order to arrest and search him.

On September 24, 2020, the Maryland Court of Special Appeals, in the unreported decision of State v. Miller, No. 2172, in a warrantless arrest that occurred in 2016, stayed any decision on the case until Pacheco was decided. After that decision was rendered, the Miller court determined that the odor of marijuana alone could not support the arrest and search of a person and suppressed drugs found on Miller.

**Did the actions of Mr. Parker following his seizure provide probable cause to search him or did it change the probable cause calculus?**

The government attempts an end run due to the murkiness of its probable cause to arrest and search position. It argues that Mr. Parker committed a new, intervening crime, and in so doing any illegality occasioned by his illegal arrest is vitiated by the new offense. It cites United States v. Sprinkle, 106 F.3d 619 (4th Cir. 1997). Sprinkle does not help the government's argument. After Mr. Sprinkle was improperly subjected to a Terry pat-down he ran from the police, pulled a firearm from his person and fired it at the officers. It was the act of firing the weapon at the police that the Fourth Circuit found to be the intervening event that "purged the taint of the prior stop."

11

Wiegmann v. State, 118 Md. App. 317, 330 (1997) states, "It is beyond cavil that 'the right to resist an unlawful, warrantless arrest remains the law of Maryland.'" Therefore, "when confronted with an unlawful, warrantless arrest, one may lawfully resist by resorting to reasonable force." Id. At 330. Wiegmann was cited by this Court in Jones when she decided that case in 1997 while serving on the Maryland Court of Special Appeals. Since the Jones Court found the arresting officer lacked probable cause to arrest Jones for trespass, Jones was within his Maryland common law right to reasonably resist that illegal arrest. Ultimately, the case was remanded to the Circuit Court for consideration of the issue of whether Jones' exercised "reasonable force" in resisting being taken into custody.

In United states v. Gaines, 668 F.3d 170 (4th Cir. 2012), Gaines was illegally pulled over while being a passenger in a vehicle. He was ordered out of the car by officers and the officers began a pat-down of Gaines. During the pat-down one officer felt what he believed to be a gun and Gaines then threw his elbow into the face of that officer and began to run. A second officer accosted Mr. Gaines who then punched that officer before being successfully arrested. The Fourth Circuit stated, "we have little difficulty concluding that where, as here, discovery of the challenged evidence follows an unlawful search, but precedes an independent criminal act on the part of the defendant, that criminal act is not an intervening event for the purpose of determining whether the "taint" of the unlawful police action is purged." Id. At 175.

12

This Court should find that since two officers were effectuating the arrest; mace was deployed; a taser was placed in Mr. Parker's back; both officers were placing their full weight on Mr. Parker's body, and his actions followed an unlawful arrest and preceded the discovery of the weapon, Mr. Parker resorted to reasonable force and such force and resistance was reasonable and not excessive under the circumstances.

### Conclusion

For all the aforesaid reasons, this Court should find the arrest and subsequent search of Mr. Parker's person was not supported by probable cause and suppress the fruits of the illegal arrest and search.

Respectfully Submitted,

/s/
_____
Law Offices of Gerald C. Ruter, P.C.
9411 Philadelphia Road, Suite O
Baltimore, Maryland 21237
(410)238-8000
Ruterlaw@verizon.net

**Certificate of Service**

I hereby certify that a copy of this document was filed by ECF electronically on this 13th day of November, 2020, to all counsel of record.

_____/s/_____

Gerald C. Ruter